UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
POONITA BEEMSIGNE,

                        Plaintiff,

           -against-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION,

                        Defendant.
-------------------------------------------------------------------------X

Docket No.: 15-4742

**COMPLAINT**

Jury Trial Demanded

Plaintiff, POONITA BEEMSIGNE, by and through her attorneys, WHITE, RICOTTA &

MARKS, P.C., complaining of Defendant herein, alleges, upon knowledge as to herself and her

own actions, and upon information and belief as to all other matters, as follows:

**JURISDICTION AND VENUE**

1.      This is a civil action for compensatory and punitive damages, proximately resulting from

Defendant's violation of Plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000-e, *et seq.,* the laws of the State and City of New York, and any other cause of action

which can be inferred from the facts set forth herein.

2.      The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, the doctrine of pendant

jurisdiction and the aforementioned statutory and constitutional provisions.

3.      Venue is proper pursuant to 28 U.S.C. § 1391.

4.      All conditions precedent to maintaining this action have been fulfilled.  A charge of

discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") on or

about March 19, 2015. On or about March 19, 2015, a Notice of Claim was filed. The statutory

1

time period has passed and Defendants have not attempted to resolve this matter. A notice of right to sue letter was issued on May 18, 2015. This action was properly instituted within ninety (90) days of the receipt of said notice.

## PARTIES

5.     At all times hereinafter mentioned, Plaintiff, Poonita Beemsigne ("Poonita"), was and still is a resident of Queens County, New York.

6.     Defendant, New York City Department of Education ("DOE"), was and still is a New York City government entity, located at 52 Chambers Street, New York, NY 10007.

## FACTS

7. Poonita is a Hindu female of Asian Guyanese descent.

8. In or around November 2001, Poonita was hired by the DOE as a full time 6th grade substitute teacher at I.S. 246 Walt Whitman Junior High School.

9. In or around January 2002, Poonita was appointed as a full time 6th grade teacher, teaching all subject areas.

10. Poonita received two Masters Degrees in elementary education and in leadership and technology from Adelphi University in 2002 and 2004.

11. In or around 2005, Poonita transferred to I.S. 229 Ronald Patterson School to participate in an internship to learn how to become a school administrator.

12. In or around 2005, Poonita became fully licensed to be a school administrator and received her tenure.

13. From 2005 to 2007, Poonita was a staff developer for Region 5, assisting with technology related issues.

14. In or around September 2007, Poonita was placed at the J.H.S. 302 Rafael Cordero School as a teacher.

15. In or around 2008, Poonita interviewed for a technology staff developer position and was hired at I.S. 230 – Magnet School for Civics in the Community for the upcoming 2008-2009 school year.

16. From the start of her tenure at I.S. 230, Poonita had received satisfactory ratings, had not received a write up, and had a good relationship with Principal Sharon Terry ("Terry").

17. In or around September 2012, Poonita went on child care leave.

18. In or around June 2014, Terry resigned from her position as Principal and was replaced by Ronald Zirin ("Zirin").

19. Poonita returned to work at the beginning of the 2014-2015 school year.

20. On or around August 11, 2014, Poonita emailed Zirin to request a meeting with him to discuss expectations for her position given her impending return to work. The next day, Poonita went to the school to meet with Zirin. During the meeting, Zirin said to Poonita, "I didn't think you were going to come back."

21. At or around the same time, Poonita emailed Assistant Principal, Barbara Newkirk ("Newkirk"), to review the curriculum and to discuss expectations. Newkirk told Poonita that there was a New Teacher event scheduled for later in that month, and that these topics would be covered at that event.

22. On or about August 28, 2014, Poonita went to the New Teacher event. The topics covered did not pertain to social studies, the subject she would be teaching. Additionally no materials were distributed, no curriculum was provided, and there was no Danielson rubric training offered, which was a new method by which teacher instruction would be assessed by the administration.

23. During the New Teacher event, Poonita asked Mr. Kringle, an ELA teacher, for a lesson plan. Mr. Kringle sent his lesson plan to Newkirk, who then sent it to Poonita. The lesson plan that she received covered first day procedures, but did not contain substantive information pertaining to social studies.

24. In or around early September 2014, the start of the 2014-2015 school year, Poonita was informed that she would be teaching 6th grade social studies, including two inclusion classes, which includes special education students, two ESL classes, and two regular educations classes. Poonita is not licensed or certified to teach special education students or to teach ESL. Moreover, up to this point, neither Newkirk nor Zirin had provided Poonita with common core lesson plans, a social studies curriculum, materials and/or textbooks, or Danielson rubric training. As a result, Poonita was forced to seek assistance from her colleagues in order to create lesson plans and a curriculum for her classes.

25. On or about September 14, 2014, Poonita emailed Newkirk asking her a framework lesson planning related question. Newkirk responded to Poonita's question, but in doing so, copied the whole 6th grade team, embarrassing Poonita in front of her colleagues.

26. At or around this time, Poonita addressed her concerns regarding the lack of support she was receiving with Zirin, as well as her concern that she, to date, had not received textbooks or a

curriculum. Similarly situated employees outside of Poonita's protected class(es) were offered assistance and materials and were not embarrassed by their direct supervisors.

27. On or about October 1, 2014, Poonita finally received an official social studies curriculum. Additionally, Zirin sent her a 103 page document regarding the Danielson rubric, which did not provide any training mechanisms or explanation as to how Poonita should modify her lessons in order to fit within the new rubric. Since Poonita was on child care leave when Danielson was first implemented (the 2013/14 school year), training was essential for her to properly perform her job. Similarly situated employees outside of her protected class(es) were properly trained in all eight Danielson Rubric domains. For example, Hannah Rosen ("Rosen"), white female and a new 6th grade social studies teacher, was trained in all eight Danielson Rubric domains.

28. On or about October 7, 2014, Poonita emailed Zirin, again, explaining and outlining that she still has not been given assistance regarding: (1)"how to do smart goals," (2) "how to incorporate conferencing in [her] lessons," (3) her "need to know what type of readings children are supposed to be doing and the strategies that need to be used," and, (4) "how do[es] [she] incorporate ESL in social studies…"

29. On or about October 15, 2014, just two weeks after receiving the social studies curriculum with still with no assistance from the administration, Newkirk conducted an informal observation of Poonita's ESL class, which she was not licensed to teach. She received two ineffective ratings and two developing ratings. Similarly situated non-Asian Guyanese Hindu employees, specifically, Rosen, were told that she can only be observed during classes that she is licensed to teach.

30. In fact, Zirin displays favoritism and hires a certain type of teacher at the school, namely teachers who are young white females or Hispanic with a light complexion with blonde and brown hair, who are slender, and/or those who have large breasts. Rosen fits that profile. Additionally, Edyeli Marku ("Marku"), Jennifer Straubinger ("Straubinger"), Monica Hinczewski, Molly Magan, Barabara Makrogiannis and Julie Nelkin are part of this group. This group of woman all get highly effective ratings regardless of the substance of their lessons, are given priority for per session jobs that earns them extra money, are made teacher-mentors, and are predominantly selected to go on overnight school trips, which afford them additional income.

31. On or about October 18, 2014, Poonita wrote Zirin an email expressing her frustration regarding her poor evaluation, in light of Defendant's continued refusal to grant her requests for training and assistance. In fact, throughout the school year, there were several training sessions that Poonita sought to be included in, but was denied inclusion, whereas her similarly situated colleagues outside of her protected class(es) were not similarly denied attendance.

32. At or around the same time, Zirin suggested that Poonita meet with Arline Cazes, ("Cazes") white female, a school mentor, who would provide additional, informal and non-evaluative, support in working with her ESL students. Newkirk clarified that Cazes would visit her classroom on an informal, non-evaluative basis and also would meet with her during her designated preparation times, time she needed to prepare for her lessons. At or around the same time, Poonita met with Cazes to discuss her frustrations. Cazes said to Poonita, "you should consider another career or you should stay at home if you can afford it." Similarly situated non-Asian Guyanese Hindu employees were not spoken to in a similar manner.

6

33. On or about October 24, 2014, Zirin and Newkirk met with Poonita to discuss her observation and her complaints regarding her lack of support. During the meeting, Zirin asked Poonita, in a derogatory manner, "where did you come from?" "what are you doing here?" "I don't know anything about you!" "How did you get this job?" Poonita responded that, up until her October 15, 2014 observation, she has only gotten satisfactory ratings throughout her tenure with the DOE. Again, she reiterated in that meeting that she has gotten little to no support from the administration, including a lack of books, materials, and training. Newkirk offered no guidance during this meeting nor did Zirin. At the end of the meeting, Zirin said to Poonita, "you should be happy if you get a developing rating this year, because you probably wouldn't get anything better."

34. On or about October 27, 2014, Zirin wrote Poonita a letter stating that he had arranged for her to visit and observe two social studies colleagues' lessons. One of these teachers, Marku, white female, conducted her lesson in a similar manner to how Poonita conducts her class. Yet, Marku is rated a highly effective teacher, while Poonita is not.

35. On or about November 10, 2014, Poonita filled out an Annual Professional Performance Review ("APPR") complaint for her October 15, 2014 observation. Additionally, that same day, Poonita filed a grievance for the lack of books for students.

36. On or about November 14, 2014, Zirin came to Poonita's classroom for an informal observation. Poonita was able to successfully complete her instruction through her lesson plan. Despite her success, Zirin gave her one developing rating and three ineffective ratings. He also baselessly attacked her professionalism.

37. On or about November 17, 2014, Poonita had a grievance hearing regarding her October 15, 2014 observation. The District Representative, Barbara Mylite, determined that Poonita's performance and lesson warranted an effective rating. However, on or about December 2, 2014, when Zirin gave Poonita a revised version of the observation, she noticed that he had removed all the information that proved Poonita's performance was effective, and left the same ratings as the original observation.

38. On or about November 25, 2014, during Poonita's free period, Zirin and Bibi Rahamatulla, ("Rahamatulla") another Assistant Principal and a female of Guyanese descent, were talking outside Poonita's classroom about getting rid of her. Zirin said to Rahamatulla, "You are her type of people. You should know how to get rid of her."

39. On or about December 9, 2014, Poonita attended a professional development session with members from the Chancellor's office present. After the session, Zirin sent Poonita an email stating that he wanted to meet with her on December 16, 2014 to discuss the behavior she had exhibited at the session, despite the fact that no complaints were made regarding her behavior. In fact, Poonita received an email from the Chancellor's office stating that it was a pleasure meeting her.

40. On or about December 16, 2014, Poonita received an email from Zirin's secretary, Laura Shain, ("Shain") to come and meet with her. On or about December 18, 2014, before school started that day, Poonita met with Shain who demanded that Poonita sign an observation. Poonita thought it was another revised version of the October 15, 2014 observation. However, it was Zirin's informal observation that took place on November 14, 2014. Having not received a copy beforehand, Poonita questioned having to sign it. Zirin then walked in and Poonita told

him that she had not received a copy of the observation to review. Zirin acknowledged that she had not received a copy beforehand, but nonetheless required her to sign it. Poonita reiterated that she believed that she had a contractual right to review it before she signed it. Zirin responded, "Oh, you are refusing to sign it?" in a harsh tone of voice. And then yelled at Shain saying, "write that she refused to sign the observation," and threatened to put the observation in Poonita's file showing that she refused to sign it. Poonita signed the observation, after being intimidated into doing so.

41. Zirin's behavior caused Poonita to experience severe anxiety and emotional distress As a result, Poonita called out sick from work on December 19, 2014, went to see a psychologist, and received a doctor's note indicating that she could not return to work until December 26, 2014. Due to the holiday vacation, Poonita did not return to work until January 5, 2015.

42. On or about December 30, 2014, Poonita sent a letter of intent to sue to the DOE, complaining of gender and national origin discrimination.

43. On or about January 4, 2015, Poonita submitted an APPR form to Zirin regarding the signing of her November 14, 2014 observation.

44. On or about January 5, 2015, Poonita returned to work after winter break. When Poonita entered her classroom, all her effects and school related materials were packed away in the corner of the classroom. Poonita was scheduled to meet with Newkirk that day to discuss receiving additional support and assistance regarding her lessons and materials used. Poonita asked Newkirk if she could first organize her things in her classroom before they met. Despite this reasonable request, Newkirk accused her of not wanting to meet and not accepting the support offered to her. This was clearly untrue.

45. On or about January 14, 2015, Poonita received a letter regarding a formal observation to be scheduled for January 21, 2015. However, Poonita had still not been trained on the Danielson Rubric. Poonita requested that the observation be postponed. Newkirk granted her request, rescheduling her formal observation to January 28, 2015.

46. On or about January 16, 2015, after a full school semester, Poonita finally received formal training on the Danielson Rubric. During this training session, she was trained on three of the eight domains. She was told that the training would continue on the remaining five domains at a later date. Since Poonita has not been trained on all eight of the Danielson Rubric domains, she asked for another postponement of her formal observation. However, Zirin refused to grant the additional postponement.

47. On or about the same day, as Poonita was walking out of the school, Zirin said to her, "you will never win."

48. At or around the same time, Poonita asked Zirin to be trained in the remaining five Danielson Rubric domains. However, he refused to do so. Similarly situated employees who had not complained of discrimination were given Danielson Rubric training on multiple occasions.

49. On or about January 22, 2015, as Poonita arrived to school, Zirin again said to her, "Beemsigne, you will never win." Later that day, Zirin said to Poonita, "whatever you say in this building will come back to me." He continued in a sarcastic tone and said, "I didn't even know you had a lawsuit," eluding to the fact that while he would be engaging in retaliatory conduct due to Poonita's protected conduct, that he would simply deny knowledge of her complaints in order to avoid liability for his conduct.

50. On or about January 27, 2015, the APPR meeting took place for the November observation. Zirin changed all her ineffective ratings to developing ratings. Zirin also removed the negative comments regarding her professionalism. When explaining his reasons for changing the observation report, Zirin stated, "I'm not changing it because of the lawsuit, but because you're being positive."

51. On or about January 28, 2015, Newkirk conducted a formal observation of Poonita's regular education class. Newkirk rated her with three effectives and three developing ratings.

52. Between approximately February and March 2015, on several occasions, Newkirk assigned Poonita to cover classes during her preparation periods to her detriment, as she cannot prepare for her lessons and cannot meet with Cazes.

53. On or about Friday March 13, 2015, Poonita had a preparation period her first period and a professional period her second period. Newkirk told Poonita that she needed to cover a gym class during her professional period. Similarly situated employees who had not complained of discrimination were not assigned to cover classes during their professional periods.

54. While supervising the children, Poonita became lightheaded and dizzy. Poonita leaned against a wall to alleviate her discomfort. However, Rahamatulla ordered her to keep walking around. As a result, Poonita fainted and was unconscious for two to three minutes. An ambulance was called and Poonita went to the hospital. Later that day, Poonita submitted an injury report to the DOE detailing the occurrence.

55. On or about Monday March 16, 2015, Poonita submitted an application for excuse of absence for personal illness (sick leave) for the days she took off following her fainting incident.

56. In or around April 2015, Poonita gave Newkirk documents that she created for instruction for her class that needed to be copied. Newkirk said she would come and sign off on the copies. Having not received approval, Poonita emailed Newkirk to find out the status of the documents. Newkirk falsely responded that she never received her documents. Similarly situated employees who did not make a complaint of discrimination did not have classroom materials withheld or impaired.

57. On or about June 10, 2015, Poonita received a letter from Assistant Principal Vitale ("Vitale") asking to meet with her on June 16, 2015 regarding an allegation that Poonita had submitted an inaccurate injury report on March 13, 2015.

58. On or about June 16, 2015, Poonita met with Vitale. Poonita learned that Zirin alleged that Poonita had filed a false injury report and asked Special Investigations to conduct an investigation. Similarly, Vitale accused Poonita of faking her fainting incident. Similarly situated employees who had not complained of discrimination were not accused of faking an injury or submitting a false injury report. As of present, Poonita has not been apprised of the results of the investigation nor has she received approval for her sick days.

59. In or around late June 2015, Poonita met with Newkirk for her end of the year meeting and to discuss her overall rating for the school year. Newkirk rated Poonita "developing," despite the fact that Poonita had still not been trained in the remaining Danielson rubric domains.

60. Based on the foregoing, Poonita alleges that the DOE discriminated against her based on her national origin, religion, and gender and subjected her to unlawful retaliation due to her complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964. Due to

Defendant's unlawful conduct, Poonita has suffered emotional, physical, and financial damages.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER FEDERAL LAW

61. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint. Title VII of the Civil Rights Act of 1964 provides that

   a. It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin, or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

62. As described above, the DOE has subjected Plaintiff to discrimination based on her sex, national origin, and religion by failing to train her properly, subjecting her to an atmosphere of adverse actions, and maintained a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER FEDERAL LAW

63. Plaintiff repeats, reiterates, and realleges each and every allegation in the above paragraphs of this complaint. Title VII of the Civil Rights Act of 1964 provides that

   a. It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

64. As described above, the Defendant retaliated against Plaintiff by failing to investigate her complaints of discrimination, giving her negative evaluations, subjecting her to a hostile work environment, an atmosphere of adverse actions, and failing to properly train her in response to her opposing discriminatory practices in violation of Title VII of the Civil Rights Act of 1964.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

65. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

66. The Administrative Code of City of NY § 8-107 [1] provides that

   a. It shall be an unlawful discriminatory practice: (1) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

67. As described above, Defendant has taken adverse employment actions against Plaintiff, including subjecting her to a hostile work environment, failing to train her, maintaining an atmosphere of adverse actions, and mischaracterizing her performance, which were motivated, in part, upon Plaintiff's sex, national origin, and religion in violation of New York City Administrative Code Title 8.

14

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

68. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

69. New York City Administrative Code Title 8-107(13) provides for employer liability for discriminatory conduct by employee, agent or independent contractor:

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
   c. the employee or agent exercised managerial or supervisory responsibility; or
   (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
   (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

70. As described above, the Defendant's actions are in violation of the New York City Administrative Code Title 8-107(13).

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

71. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer to discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

15

73. As detailed above, the Defendant has violated New York City Administrative Code Title 8.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

74. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint. New York State Human Rights Law provides that

   a. It shall be an unlawful discriminatory practice: (1) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

75. As described above, the Defendant's actions are in violation of the New York State Human Rights Law.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION
## FOR THE NEW YORK STATE HUMAN RIGHTS LAW

76. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

77. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

78. As detailed above, the Defendant is continuing to retaliate against Plaintiff in violation of the New York State Executive Law § 296.

WHEREFORE, Plaintiff demands judgment against Defendant for all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Long Island City, New York
      August 13, 2015

WHITE, RICOTTA & MARKS, P.C.
*Attorneys for Plaintiff*
3110 37th Avenue, Suite 401
Long Island City, New York 11101
(347) 464-8694

_____
JAMIE HAAR