UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
POONITA BEEMSIGNE,

                    Plaintiff,

      -against-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION,

                    Defendant.
------------------------------------------------------------------------X

**Index No.: 15-CV-4742
(RRM)(SMG)**


**PLAINTIFF'S AMENDED MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION
<u>TO DISMISS THE COMPLAINT</u>**

RICOTTA & MARKS, P.C.
*Attorneys for the Plaintiff*
31-10 37th Avenue, Suite 401
Long Island City, New York 11101
(347) 464-8694

## TABLE OF CONTENTS

PRELIMINARY STATEMENT......................................................................................1

STATEMENT OF FACTS.........................................................................................1

STANDARD OF REVIEW..........................................................................................1

ARGUMENT..........................................................................................................2

    I.      PLAINTIFF'S COMPLAINT PLAUSIBLY ESTABLISHES HER TITLE VII
          DISCRIMINATION CLAIM..........................................................................2

           A.  Adverse Employment Action.................................................................3

                i.    Failure to Train...........................................................4
                ii.   Job Assignment..........................................................5
                iii.  Workload...................................................................7
                iv.  Negative Evaluations....................................................8

           B.  Inference of Discriminatory Intent.........................................................9

                i.    Similarly Situated Employees.........................................10
                 ii.   Facts Support Inference of Sex-Plus Discrimination...........13
                iii.  Denial of Plaintiff's Training Offered to Similarly Situated Employees......14
                iv.  Remarks made by Principal Zirin..................................15

    II.     PLAINTIFF'S COMPLAINT PLAUSIBLY ESTABLISHES THAT SHE WAS
          SUBJECTED TO A HOSTILE WORK ENVIRONMENT.................................16

    III.    PLAINTIFF'S COMPLAINT PLAUSIBLY ESTABLISHES HER TITLE VII
          RETALIATION CLAIM................................................................................21

           A.  Adverse Employment Action................................................................22

            B.  Causal Nexus...................................................................................23

CONCLUSION.......................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

Ash v. Tyson Foods, Inc., 546 U.S. ___ (2006) ........................................................................15

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ...............................................................................1

Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 118 n. 7 (2d Cir. 2004)....................13

Benedict v. Town of Newburgh Town Board, 125 F. Supp. 2d 675 (S.D.N.Y. 2000) ...............................23

Blanc v. Sagem Morpo, Inc., 394 F. App'x 808, 809-10 (2d Cir. 2010) ...............................................2

Blitzer v. Potter, 2005 WL 1107064, at *10 (S.D.N.Y. May 6, 2005)...................................................13

Borrero v. Collins Bldg. Services, Inc., 2002 WL 31415511, at *15 (S.D.N.Y 2002) ...............................23

Brightman v. Prison Health Serv., Inc., 33 Misc. 3d 1201(A), 938 N.Y.S.2d 225 (Sup. Ct. Queens 2011) ................................................................................................................................22

Broich v. Inc. Village of Southampton, 462 Fed. Appx. 39, 42 (2d Cir.2012) ...........................................11

Brown v. Daikin Am. Inc., 756 F.3d 219, 230-31 (2d Cir. 2014)...........................................................10,11

Browne v. City Univ. of N.Y., 419 F.Supp.2d 315, 333-334 (E.D.N.Y. 2005) .............................................8

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). ....22

Chung v. City Univ. of New York, 605 F. App'x 20, 22 (2d Cir. 2015).......................................................8

Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993.......................................................21

Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) ........................................................10,17, 18

Dawson v. New York City Transit Authority, 2015 WL 5438790, at *2 (2d Cir. 2015).........................2,10

Dister v. Continental Group, Inc., 859 F.2d 1108, 1112 (2d Cir. 1988) ...................................................9

Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 20 (2d Cir. 2015) ...............................................2,3,9

Edwards v. Huntington Union Free Sch. Dist., 957 F. Supp. 2d 203, 211 (E.D.N.Y. 2013)........................6

Feingold v. New York, 366 F.3d 138, 152–53 (2d Cir.2004) ...................................................................18

Fincher v. Depository Trust & Clearing Corp., 2008 WL 4308126, at *3 (S.D.N.Y. 2008), aff'd, 604 F.3d 712 (2d Cir. 2010). ..............................................................................................................14

ii

Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000 ............................................3,4,6

Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000 ...................................................21

Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F. 3d 545, 664 (2d Cir. 2001)..23

Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir.2000)..................................................................10,11

Grana v. Potter, 2009 WL 425913, at *12 (E.D.N.Y. 2009)........................................................................7

Gregory v. Daly, 243 F.3d 687, 701 (2d Cir. 2001) ...................................................................................3

Harris Forklift Systems, Inc. 114 S.Ct. 367 (1993)..............................................................................16,20

Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010 ....................................................................................22

Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006) ........................................................4

Jimenez v. City of New York, 605 F Supp 2d 485, 528 (S.D.N.Y. 2009) ....................................................22

Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010). ..................................................................23

Kumaga v. New York City School Construction Authority, 910 N.Y.S.2d 405..........................................17

La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 211 (2d Cir. 2010) ......................................4,18

Lax v. 29 Woodmere Blvd. Owners, Inc., 812 F. Supp. 2d 228, 234 (E.D.N.Y. 2011)...............................13

Lee v. Verizon, No. 15-CV-523 (DLI)(PK), 2016 WL 737916, at *2 (E.D.N.Y. 2016) ..............................2

Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir.2009)...................................................................10

Lessambo v. Pricewaterhouse Coopers, L.P., 2010 WL 3958787, at *9 (S.D.N.Y. 2010)........................18

Littlejohn v. City of New York, 795 F.3d 297 (2d Cir. 2015) ........................................................3,9,10,15

Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir.2009)......................................................2

Louis v. Brooklyn Botanical Garden, 2011 WL 3857127, at *7 (E.D.N.Y. 2011 ......................................11

McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir.2001)...............................................................11,14

Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 69 (1986).....................................................................17

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).....16

Ortiz v. New York City Hous. Auth., 2011 WL 4711881, at *4 (E.D.N.Y. Sept. 30, 2011)........................4

Osby v. City of New York, 633 F. App'x 12, 13 (2d Cir. 2016) ..................................................3

Ostrowski v. Atlantic Mut. Ins Co. 968 F.2d 171, 182 ...........................................................15

Owen v. Thermatool Corporation, 155 F.3d 137, 139 (2d Cir. 1998)..................................9

Raniola v. Bratton, 243 F.3d 610, 617–23 (2d Cir. 2001)...............................................18

Renz v. Grey Advertising, Inc., 135 D.3d 217, 222 (2d Cir. 1997) ...................................9

Richardson v. N.Y.S. Dept. of Corr. Serv., 180 F. 3d 426 (2d Cir. 1999................................3,17

Risco v. McHugh, 868 F. Supp. 2d 75, 101 (S.D.N.Y. 2012),..........................................14

Rodriguez v. Bd. of Ed. of Eastchester Union Free Sch. Dist., 620 F.2d 362, 364 (2d Cir. 1980)............4,6

Rothstein v. UBS AG, 708 F.3d 82, 90 (2d Cir. 2013)………………………………………………..1

Roth v. Jennings, 489 F. 3d 499, 509 (2d Cir. 2007)………………………………………………2

Russell v. County of Nassau, 696 F.Supp.2d 213, 233–34 (E.D.N.Y.2010)................................11

Santana v. City of Ithaca, N.Y.,.......................................................................................18

Skates v. Inc. Vill. of Freeport, 2016 WL 1459659, at *7 (E.D.N.Y. 2016), report and recommendation
   adopted, 2016 WL 1452391 (E.D.N.Y. 2016) ...............................................................3

Sotomayor v. City of New York, 862 F. Supp. 2d 226, 254 (E.D.N.Y. 2012) .............................8

Stratton v. Dept. for the Aging for the City of New York, 132 F.3d 217, 222 (2d Cir. 1997)....................9

Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) ........................................................25

Tolbert v. Smith, 790 F.3d 427, 435 (2d Cir.2015)..............................................................2

Tomka v. The Seiler Corporation, 66 F.3d. 1295, 1305 (2d Cir. 1995) .....................................16

Vega v. Hempstead Union Free Sch. Dist., 2015 WL 5127519, at *10 (2d Cir. 2015) .........................2,3,9

Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir.1997).........................................4

Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir.2000) .............................18

White v. Pacifica Found., 973 F. Supp. 2d 363, 380 (S.D.N.Y. 2013) ........................................16

Williams v. New York City Housing Authority, 872 N.Y.S.2d 27, 39 (1st Dept. 2009 ..............................17

## Statutes

42 U.S.C. §2000-e, *et seq*.................................................................................................1

N.Y. Exec. Law § 295, *et seq*............................................................................................1

N.Y.C. Admin. Code § 8–107............................................................................................1

FRCP 12(b)(6)....................................................................................................................1

# PRELIMINARY STATEMENT

Plaintiff, Poonita Beemsigne ("Beemsigne" or "Plaintiff"), commenced this action on August 13, 2015 against Defendant, The New York City Department of Education ("DOE" or "Defendant") alleging discrimination and retaliation based on her sex, national origin and/or religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e, *et seq.*, the New York New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 295, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–107. Defendants now move to dismiss the Complaint. For the reasons set forth in further detail below, it is respectfully submitted that Defendants' motion should be denied in its entirety.

# STATEMENT OF FACTS

As the relevant facts discussed throughout the body of this Memorandum are contained in the Complaint, the Court is respectfully referred to the Complaint, ECF No. 1, for a full recitation of the facts.

# STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In considering a Rule 12(b)(6) motion, courts must accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. See Rothstein v. UBS AG, 708 F.3d 82, 90 (2d Cir. 2013). Furthermore, in deciding a Rule 12(b)(6) motion, "courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing

suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken." Lee v. Verizon, No. 15-CV-523 (DLI)(PK), 2016 WL 737916, at *2 (E.D.N.Y. 2016); see, e.g., Roth v. Jennings, 489 F. 3d 499, 509 (2d Cir. 2007).

In the context of an employment discrimination case, at the pleadings stage of litigation, a plaintiff is not required to plead a *prima facie* case of discrimination, as contemplated by the McDonnell Douglas framework. Vega v. Hempstead Union Free Sch. Dist., 2015 WL 5127519, at *10 (2d Cir. 2015). Indeed, plaintiff's initial burden is described as "not onerous" and "minimal and *de minimis*." Dawson v. New York City Transit Authority, 2015 WL 5438790, at *2 (2d Cir. 2015).

**ARGUMENT**

I.  **PLAINTIFF'S COMPLAINT PLAUSIBLY ESTABLISHES HER TITLE VII DISCRIMINATION CLAIM**

Discrimination claims brought pursuant to Title VII, NYSHRL, and NYCHRL are governed by the *McDonnell Douglas* burden shifting framework. See Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 20 (2d Cir. 2015). Thus, in order to a establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that: "(1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Dooley, 636 F. App'x at 20, quoting Tolbert v. Smith, 790 F.3d 427, 435 (2d Cir.2015) (internal quotation marks omitted). However, claims under the NYCHRL must be reviewed independently from and more liberally than their federal and state counterparts." Blanc v. Sagem Morpo, Inc., 394 F. App'x 808, 809-10 (2d Cir. 2010), citing Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir.2009).

The Second Circuit has made clear that a plaintiff need not plead a *prima facie* case of discrimination to survive a motion to dismiss. See Dooley v. JetBlue Airways Corp., 2015 WL 9261293, at *5 (2d Cir. 2015); Vega, 801 F.3d at 84; Littlejohn v. City of New York, 795 F.3d 297 (2d Cir. 2015). Indeed, the elements of a *prima facie* case are considered in this context only insofar as they provide a helpful guideline of what is necessary to render a plaintiff's claims plausible. Skates v. Inc. Vill. of Freeport, 2016 WL 1459659, at *7 (E.D.N.Y. 2016), report and recommendation adopted, 2016 WL 1452391 (E.D.N.Y. 2016). Consequently, a plaintiff need only allege "that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Osby v. City of New York, 633 F. App'x 12, 13 (2d Cir. 2016), quoting Vega, 801 F.3d at 87.

Here, defendant argues that plaintiff has failed to plausibly allege that the DOE took an adverse action against her and that her sex, national origin, or religion was a motivating factor for taking that action. Each of these will be discussed below.

**A. Adverse Employment Action**

An employment action is considered adverse if it "works a 'materially adverse change in the terms and conditions of employment.'" Gregory v. Daly, 243 F.3d 687, 701 (2d Cir. 2001) (quoting Richardson v. New York State Dep't of Corr. Servs., 180 F.3d 426, 446 (2d Cir. 1999)). To be "materially adverse" a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). While everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII, courts in this Circuit have held that a materially adverse change might be indicated by "termination of

employment, a demotion ..., a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 211 (2d Cir. 2010), quoting Galabya, 202 F.3d at 640. Indeed, "Congress cast the prohibitions of Title VII broadly to include subtle distinctions in the terms and conditions of employment as well as gross salary differentials based on forbidden classifications." Rodriguez v. Bd. of Ed. of Eastchester Union Free Sch. Dist., 620 F.2d 362, 364 (2d Cir. 1980). As such, the ultimate determination of whether such an action is adverse must be decided on a case-by-case basis as "there are no bright-line rules [and] courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" Ortiz v. New York City Hous. Auth., 2011 WL 4711881, at *4 (E.D.N.Y. Sept. 30, 2011), quoting Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir.1997).

i.    *Failure to Train*

Training is a benefit of employment that receives protection under Title VII. See e.g., La Grande, 370 F. App'x at 211. As such, the denial of training can constitute an adverse employment action where it "bear[s] on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation." Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 352 (S.D.N.Y. 2006)(internal citation omitted).

Here, Plaintiff has established that she was subject to an adverse employment action when the DOE denied her training in the Danielson rubric. When Plaintiff returned from child care leave at the beginning of the 2014-2015 school year, the Danielson rubric, a new method of teacher instruction assessment, had been implemented. (Compl. ¶17, 19, 22). Despite several requests, Plaintiff did not receive training in the Danielson rubric. (Compl. ¶22, 27, 31). Training in the Danielson rubric was "essential for her to properly perform her job." (Compl. ¶27).

Indeed, throughout the school year, there were several training sessions in which Plaintiff sought to be included in, but was denied. (Compl. ¶31). Plaintiff contends that on October 15, 2014, Assistant Principal, Barbara Newkirk ("Newkirk"), conducted an informal evaluation of her teaching, in which Plaintiff received two ineffective ratings and two developing ratings, as a result of Plaintiff's lack of training in the Danielson rubric. (Compl. ¶29). While Plaintiff admits that by January 2015 she eventually received some formal training in three out of the eight domains on the Danielson Rubric, she was never trained in the remaining five categories. (Compl. ¶46). As detailed below, Plaintiff contends that her non-Asian Guyenese and/or Hindu similarly situated co-workers received extensive training in all eight categories of the Danielson rubric. (Compl. ¶27, 26). Plaintiff asserts that teachers who get highly effective ratings are given priority for opportunities to earn additional income such as per session jobs, becoming teacher-mentors, and to go on overnight school trips, opportunities that she cannot receive priority for due to the DOE's lack of training. (Compl. ¶30).

As a result of the foregoing, Plaintiff has sufficiently established that she was subject to an adverse employment action when the DOE failed to train her most categories of the Danielson rubric. DOE's failure to train Plaintiff was a materially significant disadvantage, particularly as the training was essential to Plaintiff's job performance, and their refusal to train her diminished her opportunities for professional growth. See La Grande, 370 Fed. Appx. at 211 (finding plaintiff had alleged an adverse employment action where his complaint stated that he was not allowed to attend training even though it was "part of the job.").

### ii.    *Job Assignment*

A change in duties or job reassignment may be an adverse employment action, "if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's

career." Edwards v. Huntington Union Free Sch. Dist., 957 F. Supp. 2d 203, 211 (E.D.N.Y. 2013), quoting Galabya, 202 F.3d at 641. In order to constitute an adverse employment action, the new assignment must be "materially less prestigious, materially less suited to h[er] skills and expertise, or materially less conducive to career advancement." Galabya, 202 F.3d at 641; see Rodriguez v. Bd. of Educ., 620 F.2d 362, 366 (2d Cir.1980) (holding that plaintiff's evidence that she tailored her master's and doctoral coursework to prepare for teaching junior high students so that her reassignment from teaching junior high to elementary school art classes rendered her twenty years of experience useless was sufficient to establish an adverse employment action).

Here, Plaintiff set forth facts sufficient to plausibly establish that her assignment for the 2014-2015 school year was materially less suited to her skills and expertise so as to create a significant disadvantage for her career advancement, creating an adverse employment action. Plaintiff was hired by the DOE in 2001 as a full time 6th grade substitute teacher. (Compl. ¶8). In January 2002, she was appointed to a full-time position teaching 6th grade in all subject areas. (Compl. ¶9). In 2002, Plaintiff received her Masters Degree in elementary education from Adelphi University. (Compl. ¶10). In 2004, Plaintiff received her second Masters Degree in leadership and technology from Adelphi University. (Compl. ¶10). In 2005, Plaintiff transferred from I.S. 246 Walt Whitman Junior High School where she was teaching 6th grade, to I.S. Ronald Patterson School in order to participate in an internship to learn how to become a school administrator, and later that year became a fully licensed school administrator and received her tenure. (Compl. ¶11-12). From 2005-2007, Plaintiff was a staff developer for Region 5, assisting with technology related issues. (Compl. ¶13). In 2008, Plaintiff was hired as a technology staff developer at I.S. 230, where she remained until going on child care leave in September 2012. (Compl. ¶15,17). When Plaintiff returned to work at the beginning of the 2014-2015 school year,

she was informed that she would be teaching 6th grade social studies, including two inclusion classes, two (2) English as a Second Language ("ESL") classes, and two (2) regular education classes. (Compl. ¶24). Inclusion classes include special education students. (Compl. ¶24). Plaintiff is not licensed or certified to teach special education or ESL students. (Compl. ¶24). On October 15, 2014, Newkirk conducted an informal observation of Plaintiff's ESL class, where she received two ineffective ratings and two developing ratings, despite the fact that she was not licensed to teach ESL (Compl. ¶29). Plaintiff's co-workers had been told that they could only be observed during classes in which they were licensed to teach. (Compl. ¶29). As a result of Plaintiff's reassignment to 6th grade social studies with two inclusion classes and two ESL classes, Plaintiff received negative ratings which could be significantly detrimental to Plaintiff's career, as demonstrated by the fact that teachers rated highly effective receive opportunities for additional income. (Compl. ¶30). Furthermore, the assignment is materially less suited to Plaintiff's skills and expertise as she is a licensed school administrator with an educational focus in leadership and technology and is not licensed to teacher either special education nor ESL students.

### iii. *Workload*

Similarly, "the assignment of a disproportionately heavy workload" and/or "comparatively poor assignments can constitute adverse employment actions." Edwards, 957 F. Supp. 2d at 211, quoting Grana v. Potter, 2009 WL 425913, at *12 (E.D.N.Y. 2009)(internal citations and quotations omitted). To establish that a heavy workload and/or poor assignment constitutes an adverse employment action, the Plaintiff must show that it created a materially significant disadvantage with regard to opportunities for professional growth and career advancement. See e.g., Edwards, 957 F. Supp. 2d at 211.

Plaintiff alleges that on several occasions between February and March 2015, the DOE assigned her to cover classes during her preparation periods to her detriment. (Compl. ¶52). Following the October 15, 2014 informal observation, where Plaintiff received two ineffective ratings and two developing ratings, Plaintiff emailed the Principal Ronald Zirin ("Zirin"), expressing her frustration regarding her poor evaluation in light of the DOE's continued refusal to grant her requests for training. (Compl. ¶29, 31). As a result, Zirin assigned a school mentor, Arline Cazes ("Cazes") who would meet with Plaintiff during her designated preparation periods. (Compl. ¶32). On November 14, 2014, following an informal observation, Plaintiff received one developing rating and three ineffective ratings[1]. (Compl. ¶36). Following a formal observation on January 28, 2015, Plaintiff received three effective ratings and three developing ratings. (Compl. ¶51). Based on these observations, Plaintiff was "developing" and thus, needed to make improvements. By assigning Plaintiff to cover classes during her preparation period, she was deprived of valuable time needed to prepare her lessons and meet with her mentor, depriving her of professional opportunities and career advancements offered to highly effective teachers.

### iv.   *Negative evaluations*

Negative employment evaluation letters and performance reviews may be considered adverse employment actions when they trigger negative consequences to the terms and conditions of the plaintiff's employment. See e.g., Chung v. City Univ. of New York, 605 F. App'x 20, 22 (2d Cir. 2015); see also Browne v. City Univ. of N.Y., 419 F.Supp.2d 315, 333-334 (E.D.N.Y. 2005). Plaintiff must establish that the negative evaluation adversely effected the terms and conditions of her employment, such as her compensation, benefits or job title. See e.g., Sotomayor v. City of New York, 862 F. Supp. 2d 226, 254 (E.D.N.Y. 2012).

---

[1] On January 27, 2015 following an APPR meeting regarding Plaintiff's November 24 observation, all of the ineffective ratings were changed to developing ratings. (Compl. ¶50).

As detialed above, Plaintiff has established that she received several negative ratings upon her return to work in 2014. As a result, Plaintiff was denied opportunities offered to teachers who receive highly effective ratings that afford additional income. (Compl. ¶30). Therefore, Plaintiff's negative evaluations had a materially adverse effect on the terms and conditions of her employment in that she was denied opportunities for compensation, professional growth and career advancement.

## B. Inference of Discriminatory Intent

The ultimate issue in an employment discrimination case is whether the plaintiff has alleged facts from which it can reasonably be inferred that plaintiff's status in a protected class "played a motivating role in, or contributed to, the employer's decision" to take a particular employment action. Renz v. Grey Advertising, Inc., 135 D.3d 217, 222 (2d Cir. 1997); Stratton v. Dept. for the Aging for the City of New York, 132 F.3d 217, 222 (2d Cir. 1997). Notably, plaintiff's status in a protected class need not be the only factor considered in the employment action. Owen v. Thermatool Corporation, 155 F.3d 137, 139 (2d Cir. 1998).

A plaintiff will meet this burden "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015), citing Littlejohn v. City of New York, 795 F.3d 297, 312-13 (2d Cir. 2015). This is because discriminatory intent will rarely be demonstrated by "smoking gun" proof. Rather, in most discrimination cases direct evidence of the employer's motivation is unavailable. Dister v. Continental Group, Inc., 859 F.2d 1108, 1112 (2d Cir. 1988). As such, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 20 (2d Cir. 2015), quoting Vega, 801 F.3d at 84. Again, it is critical to highlight that the plaintiff's burden at this stage of the litigation is "minimal and *de*

*minimis.*" Dawson v. New York City Transit Authority, 2015 WL 5438790, at *2 (2d Cir. 2015); see also Littlejohn, 795 F.3d at 311 ("The plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification.").

There are many different ways in which a plaintiff may sufficiently demonstrate an inference of discrimination at the pleadings stage. See e.g., Littlejohn, 795 F.3d at 312, quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir.2009)("An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'"). Accordingly, in determining whether Plaintiff's sex, religion, and/or national origin was a motivating factor in taking the adverse actions the inquiry is not limited to the aforementioned factors. Rather, Courts must consider the working environment as a whole. Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000).

### i. *Similarly Situated Employees*

One way in which a plaintiff may demonstrate a plausible inference of discrimination is by showing that her employer subjected her to disparate treatment, that is, treated her less favorably than similarly situated employees outside of her protected class. Brown v. Daikin Am. Inc., 756 F.3d 219, 230-31 (2d Cir. 2014), citing Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir.2000). To do so, a plaintiff must show that she shared sufficient employment characteristics with the individual(s) she wishes to compare herself to, so that they can be considered similarly situated in all material respects. See Broich v. Inc. Village of Southampton,

462 Fed. Appx. 39, 42 (2d Cir.2012); see also Russell v. County of Nassau, 696 F.Supp.2d 213, 233–34 (E.D.N.Y.2010).

Similarly situated in all material respects "does not mean all respects generally, but rather sufficiently similar to support at least a minimal inference that the difference of treatment may be attributable to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir.2001). Indeed, "[w]hat will constitute 'all material aspects' will vary from case to case." Brown v. Daikin Am. Inc., 756 F.3d 219, 230-31 (2d Cir. 2014). As a result, whether two employees are similarly situated is generally a question of fact for the jury, rather than a legal question to be resolved on a motion to dismiss. Id., quoting Graham, 230 F.3d at 39. Nonetheless, Defendant argues that Plaintiff's discrimination claim must fail because she has not demonstrated that her comparators are sufficiently similar in order to support even a minimal inference of discrimination.

Generally, employees are similarly situated in all material respects when they are subject to the same workplace standards. Graham, 230 F.3d at 40. Courts have held that examples of what constitutes "all material respects" include, *inter alia*, holding the same positions of roughly the same rank, and being subject to the same performance review and disciplinary standards. See e.g., Graham, 230 F.3d at 34, 39; Louis v. Brooklyn Botanical Garden, 2011 WL 3857127, at *7 (E.D.N.Y. 2011). Therefore, while the plaintiff's and comparator's circumstances "must bear a 'reasonably close resemblance,' they need not be 'identical.' Brown, 756 F.3d at 230, quoting Graham, 230 F.3d at 40.

Plaintiff is a Hindu female of Asian Guyanese descent who teaches 6th grade social studies. (Compl. ¶7, 24). In her Complaint, Plaintiff identifies several similarly situated non-Asian Guyanese Hindu teachers who were given preferential treatment. Indeed, Plaintiff alleges

that Principal Zirin "displays favoritism" towards teachers who are young white or Hispanic females with light complexions. (Compl. ¶30). Amongst this group of non-Asian Guyanese Hindu teachers who receive preferential treatment are Hannah Rosen ("Rosen"), who Plaintiff identifies as a white female and 6th grade social studies teacher, and Edyeli Marku ("Marku"), who Plaintiff identifies as a white female and social studies teacher. (Compl. ¶27, 30, 34). Plaintiff also identifies Jennifer Straubinger, Monica Hinczewski, Molly Magan, Barabara Makrogiannis and Julie Nelkin as part of this group of teachers who receive preferential treatment and are either young white or Hispanic females with light complexions. All teachers are subject to assessment by the administration pursuant to the Danielson rubric, sufficiently alleging that all of the above teacher comparators are subject to the same performance and disciplinary standards. (Compl. ¶22). As a result of the foregoing, Plaintiff has identified several similarly situated employees in all material ways since they hold roughly the same positions, as teachers, and are held to the same performance and disciplinary standards.

Plaintiff's Complaint further establishes that the aforementioned similarly situated individuals outside of Plaintiff's protected group were given preferential treatment. This group of white and/or Hispanic females all received highly effective ratings regardless of the substance of their lessons. (Compl. ¶30). For example, on October 27, 2014, pursuant to Zirin's instruction, Plaintiff observed one of Marku's social studies lessons. (Compl. ¶34). Although Marku conducted her lesson in a similar manner to which Plaintiff conducts her class, Marku received ratings of "highly effective" while Plaintiff did not. (Compl. ¶34). They were also given priority for per session jobs, were made teacher-mentors, and were predominantly selected to go on overnight school trips, all of which afford them additional income. (Compl. ¶30).

### ii. *Facts Support Inference of Sex-Plus Discrimination*

Not only do these facts support an inference of national origin and religion based discrimination, they also support Plaintiff's claim of sex-based discrimination. Here, Plaintiff experienced "sex-plus" discrimination, a discrimination claim that is based on membership in a class based on gender plus another characteristic, where gender is itself a protected category under the statutory rubric. Lax v. 29 Woodmere Blvd. Owners, Inc., 812 F. Supp. 2d 228, 234 (E.D.N.Y. 2011). Typically, the term "sex-plus" or "gender-plus" discrimination denotes "a policy or practice by which an employer classifies employees on the basis of sex plus another characteristic." Blitzer v. Potter, 2005 WL 1107064, at *10 (S.D.N.Y. 2005), quoting Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 118 n. 7 (2d Cir. 2004). "[A]ll sorts of physical characteristics," presumably including a person's physical attractiveness, may be among the non-sex factors on which an employer discriminates, and which, coupled with gender discrimination, may give rise to a sex-plus claim. Blitzer v. Potter, 2005 WL 1107064, at *10 (S.D.N.Y. May 6, 2005).

Here, Plaintiff has sufficiently pled that she was treated less well by her male principal than similarly situated female teachers with a certain look. (Compl. ¶30). Specifically, Zirin gives preferential treatment to young female teachers who are white or Hispanic, with a light complexion, blonde or brown hair, who are slender and/or have large breasts. (Compl. ¶30). As an Asian-Guyanese woman, Plaintiff does not share these characteristics and was consistently treated less well than the aforementioned females because of her perceived physical attractiveness.

### iii.   *Denial of Plaintiff's Training Offered to Similarly Situated Employees*

Despite the above factual allegations set forth in the Complaint, Defendant asserts that there is "only one single instance where Plaintiff provides anything other than demographic information for an alleged comparator," referring to Plaintiff's allegations that she was treated less well than Rosen. Defendant contends that the facts alleged demonstrate that Rosen was not similarly situated, because she was a new teacher and Plaintiff had been with the DOE for ten years. Defendant cites no authority that supports the contention that this fact alone disproves that the two are similarly situated, and ignores the fact that Plaintiff was on child care leave for two years, during which time an entirely new instruction and assessment rubric was implemented. (Compl. ¶17, 19, 27). As stated above, both Plaintiff and Rosen were 6th grade social studies teachers, and both were subject to the performance review and disciplinary standards set forth in the Danielson rubric, which were new to both of them. Again, "a plaintiff is not obligated to show disparate treatment of an *identically* situated employee." McGuinness, 263 F.3d at 54.

Not only are Plaintiff's assertions regarding Rosen sufficient to show that the two are similarly situated, they are sufficient, in and of themselves, to support Plaintiff's disparate treatment claim. A plaintiff may present a disparate treatment discrimination claim based on her employer's failure to train her or provide her with equal access to training by showing that her employer offered the training to similarly situated employees, and that she was denied that training under circumstances that give rise to an inference of discrimination. Risco v. McHugh, 868 F. Supp. 2d 75, 101 (S.D.N.Y. 2012), citing Fincher v. Depository Trust & Clearing Corp., 2008 WL 4308126, at *3 (S.D.N.Y. 2008), aff'd, 604 F.3d 712 (2d Cir. 2010).

As stated above, Plaintiff was continuously denied training in all eight domains of the Danielson rubric. Plaintiff sets forth that Rosen, a white female who was also a 6th grade social

studies teacher, was trained in all eight Danielson Rubric domains. (Compl. ¶ 27). Indeed, on one occasion Rosen was told that she can only be observed during classes that she is licensed to teach, while Plaintiff was observed in a class she was not licensed to teach (Compl. ¶ 29). Plaintiff sought to be included in several training sessions offered throughout the year and was denied, while her comparators were able to attend. (Compl. ¶31).

### iv.    *Remarks made by Principal Zirin*

Remarks made by decision makers that could be viewed as reflecting a discriminatory animus also can be used to demonstrate discriminatory intent. <u>Chertkova</u>, 92 F.3d 81, 90 (2d Cir. 1996) (citing <u>Ostrowski v. Atlantic Mut. Ins Co</u>. 968 F.2d 171, 182) (2d Cir. 1992); <u>See</u> <u>Ash v. Tyson Foods, Inc.</u>, 546 U.S. ___ (2006)(holding that the use of the word "boy", standing alone, although a neutral word, can be evidence of discrimination and discriminatory intent depending on the context of the conduct). Furthermore, an employer's invidious comments about others in the employee's protected group may also give rise to an inference of discriminatory intent. <u>See</u> <u>Littlejohn</u>, 795 F.3d at 312 (citations omitted).

On November 25, 2014 Plaintiff overheard Zirin speaking to one of the assistant principals, Bibi Rahamatulla, who is a female of Guyanese descent. (Compl. ¶38). Right outside of Plaintiff's classroom, Zirin said to Rahamatulla, "you are her type of people. You should know how to get rid of her." (Compl. ¶38). This comment represents both a remark by a decision maker, Zirin, that reflects a discriminatory motive, and a comment made to a member of Plaintiff's protected class, as he was clearly inferring that because they were both the same "type of people," i.e., Guyanese, Rahamatulla should better understand Plaintiff.

Defendant attempts to argue that this cannot imply discriminatory animus, because Rahamatulla is one of the administrators that Plaintiff claims treated her unfairly and thus it

actually undermines Plaintiff's claim. However, this argument is inapposite. First, "[t]he Supreme Court has 'rejected any conclusive presumption' that an employer or, presumably, his agents, will not discriminate against members of their own race or gender[,]" Feingold, 366 F.3d at 155, quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Second, the only allegation regarding Rahamatulla is that during a gym period which Newkirk ordered Plaintiff to cover, Plaintiff began to feel dizzy and lightheaded and Rahamatulla yelled at her to keep walking around. (Compl. ¶54). This is highly distinguishable from the circumstances in the main case cited by Defendant, in which two out of the three administrators who were *actually* responsible for the decision to terminate and suspend the African-American Plaintiff, were also African-American. See White v. Pacifica Found., 973 F. Supp. 2d 363, 380 (S.D.N.Y. 2013). Thus, the comment made by Zirin to Rahamatulla does not undermine an inference of discriminatory intent, but instead supports it.

As a result of the foregoing, Plaintiff has alleged facts that give plausible support to a minimal inference of discriminatory motivation. It is respectfully submitted that Defendant's motion to dismiss Plaintiff's discrimination claim be denied.

## II.   PLAINTIFF'S COMPLAINT PLAUSIBLY ESTABLISHES THAT SHE WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT

Hostile work environment claims are properly pled when a plaintiff has alleged that an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." Tomka v. The Seiler Corporation, 66 F.3d. 1295, 1305 (2d Cir. 1995). A hostile work environment exists "when the workplace is permeated with 'discriminatory intimidation, ridicule and insult . . . that it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment'." Id. at 1305 (quoting Harris Forklift Systems, Inc. 114 S.Ct. 367 (1993)).

In order to set forth a *prima facie* case for a hostile work environment, a plaintiff must prove, *inter alia,* that (1) he was in a protected class; and that the alleged harassment (2) was severe or pervasive such that it altered conditions of employment; (3) was unwelcome; and, (4) was based on plaintiff's status as a member of the protected class. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 69 (1986), quoting EEOC Guidelines, 29 C.F.R. §1604.11(b).

With respect to Plaintiff's NYCHRL hostile work environment claim, the NYCHRL is much broader than either state or federal claims. In fact, "state and federal decisions do not constitute precedent unless they 'are viewed as a floor below which the City's Human Rights law cannot fall). See Kumaga v. New York City School Construction Authority, 910 N.Y.S.2d 405 (Sup. Ct. New York 2010), quoting Williams v. New York City Housing Authority, 872 N.Y.S.2d 27, 39 (1st Dept. 2009). Whereas a hostile work environment claim must be "severe or pervasive" under state or federal law, Plaintiff need only plead, "that she has been treated less well than other employees..." because of her membership in a protected class to state a claim under NYCHRL. Williams, 872 N.Y.S.2d at 39. While the severity or pervasiveness of the conduct may go to damages, they do not pertain to "the question of underlying liability." Id.

Defendant argues that Plaintiff fails to plausibly plead a hostile work environment claim because the statements that Plaintiff alleges were hostile were nothing more than attempts by the DOE to provide Plaintiff with constructive feedback, support and/or critical assessment, and do not rise to the level of "intimidation, ridicule, and insult." However, in order to evaluate any hostile work environment claim, it is critical to consider the totality of circumstances, which includes all of the facts alleged, so as to obtain a realistic view of the work environment. Cruz v. Coach, 202 F.3d 560, 572 (2d Cir. 2000); Richardson v. N.Y.S. Dept. of Corr. Serv., 180 F. 3d 426 (2d Cir. 1999). Furthermore, "'[t]he fact that the law requires harassment to be severe or

pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases.'" La Grande, 370 F. App'x at 210, quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir.2000). Indeed, even a single incident can be enough to create a hostile work environment. Cruz v. Coach, 202 F.3d at 560, 571 (noting that the use of the word "nigger" even on one occasion can be severe enough to constitute a hostile work environment based on race). Contrary to Defendant's argument, and when viewed under the totality of the circumstances, Plaintiff's complaint is replete with comments and actions taken by the DOE against Plaintiff from which one can plausibly infer created an intimidating, hostile or offensive working environment.

In Santana v. City of Ithaca, N.Y., the court applied a totality of the circumstances analysis to determine whether there was an inference of discrimination in order to survive a motion to dismiss. 2013 WL 1855829, at *3 (N.D.N.Y. May 1, 2013); See Raniola v. Bratton, 243 F.3d 610, 617–23 (2d Cir. 2001). In ruling that plaintiff's hostile work environment claim was "plausible at this juncture", the Court considered that the plaintiff was assigned a greater caseload than his similarly situated co-workers, was provided less resources, was reprimanded and terminated under unequal disciplinary standards, and endured racially-charged language from his supervisor. Id. Taken together, the court held that the plaintiff had pled allegations sufficient to give rise to an inference of discrimination as well a claim for hostile work environment. Id.; see Feingold v. New York, 366 F.3d 138, 152–53 (2d Cir.2004) (finding evidence of discriminatory intent where workload and disciplinary standards varied markedly along racial lines); see also Lessambo v. Pricewaterhouse Coopers, L.P., 2010 WL 3958787, at *9 (S.D.N.Y. 2010) ("Further, even stray discriminatory remarks, when combined with other indicia of discrimination like disparate treatment, can raise an inference of discrimination.").

Similarly here, Plaintiff has sufficiently pled that she was subjected to a hostile work environment because she was, *inter alia*, assigned a heavier workload than her similarly situated co-workers, provided less resources, endured discriminatory comments from her supervisor, and was subjected to higher standards than her co-workers. First, as detailed above, Plaintiff was ordered to cover classes during her preparation period on numerous occasions. (Compl. ¶52). Next, Plaintiff was not provided with materials and/or textbooks and had to file a grievance because of it. (Compl. ¶35). Plaintiff was not provided with common core lesson plans or a social studies curriculum at the start of the school-year. (Compl. ¶24). As such, Plaintiff was forced to turn to colleagues in order to create her own lesson plans and curriculum, creating a heavier workload for Plaintiff as compared to her similarly situated colleagues who already had lesson plans and a curriculum. (Compl. ¶24).

Moreover, Plaintiff has set forth numerous instances of discriminatory and insulting comments by her supervisors. Zirin's comment to Rahamatulla that, "you are her type of people," referring to Rahamatulla being Guyanese as described above, provides but one example of a discriminatory comment by Plaintiff's supervisor contributing to a hostile work environment. (Compl. ¶38). After being denied training in the Danielson rubric or provided with any support or material to prepare for the school year, Plaintiff emailed Assistant Principal Newkirk ("Newkirk"), asking her a lesson planning question, and when Newkirk replied, she copied the entire 6th grade team in an effort to embarrass her in front of her colleagues. (Compl. ¶ 22, 25). Just one month later, Principal Zirin and Newkirk met with Plaintiff to discuss the negative ratings she had received when Newkirk improperly observed her ESL class on October 15, 2014, and to discuss Plaintiff's complaints regarding her continued lack of support. (Compl. ¶33). During the meeting, Zirin made several discriminatory and degrading comments to Plaintiff

asking in a derogatory manner, "where did you come from?" "what are you doing here" "I don't know anything about you!" "how did you get this job." (Compl. ¶33). Despite Plaintiff again expressing her concerns about being denied support and training, no guidance was offered to her and Zirin ended the meeting by saying "you should be happy if you get a developing rating this year, because you probably wouldn't get anything better." (Compl. ¶33).

Three days after this meeting, when Zirin finally did offer Plaintiff some guidance, he sent her to observe another teacher's social studies class. (Compl. ¶34). Although Plaintiff conducts her lessons very similar to the one she was observing by Marku, a white female, Marku received highly effective ratings and Plaintiff did not, demonstrating that she was assessed differently than her non-Asian Guyanese Hindu female comparators. (Compl. ¶34). Again, this is only one example of Zirin displaying favoritism for a young white female. (Compl. ¶30). Indeed, Plaintiff filed a grievance regarding her October 15, 2014 observation, since Newkirk was not supposed to observe a class which she was not licensed to teach. (Compl. ¶ 29, 37). Following a grievance hearing on November 17, 2014, the hearing officer, District Representative Barbara Mylite, determined that Plaintiff's performance and lesson warranted an effective rating, rather than the two ineffective ratings and two developing ratings she received. (Compl. ¶ 37). However, when Plaintiff received her revised observation form on, Zirin had removed all of the information that proved that her performance was effective, and failed to change her rating to effective, despite the hearing officer's determination. (Compl. ¶37).

Lastly, when evaluating a hostile work environment claim the most important factor to consider is whether an employee's work performance was affected by the abusive environment. In Harris v. Forklift Systems, Inc., the Supreme Court specifically states that the phrase "'terms, conditions, or privileges' of employment evinces a congressional intent 'to strike at the entire

spectrum of disparate treatment of men and women in employment." 114 S.Ct. at 370. Here, Plaintiff has demonstrated that her work performance was affected by the abusive environment. On December 19, 2014, Plaintiff had to call out sick from work to see a psychologist because Zirin's discriminatory behavior had caused her to experience severe anxiety and emotional distress. (Compl. ¶41). The psychologist determined that Plaintiff could not return to work until December 26, 2014. (Compl. ¶41).

These comments and actions by the DOE, taken together with the fact that Zirin gave preferential treatment to non-Asian Guyanese Hindu females, particularly white and Hispanic females with a particular look, created a hostile work environment for Plaintiff. The Complaint is replete with examples of the DOE permeating the workplace with discriminatory intimidation, ridicule and insult toward Plaintiff, which caused her to miss work. As a result of the foregoing, Defendant's motion to dismiss Plaintiff's hostile work environment claim should be dismissed.

## III.    PLAINTIFF'S COMPLAINT PLAUSIBLY ESTABLISHES HER TITLE VII RETALIATION CLAIM

[T]o establish a *prima facie* case of retaliation under Title VII, an employee must show that: "(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000), quoting Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993). As with Plaintiff's discrimination claims and hostile work environment claims, the elements of retaliation under the NYCHRL are broader in "that the plaintiff need not prove any adverse' employment action; instead, he [she] must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity.'" Brightman v. Prison

Health Serv., Inc., 33 Misc. 3d 1201(A), 938 N.Y.S.2d 225 (Sup. Ct. Queens 2011), quoting Jimenez v. City of New York, 605 F Supp 2d 485, 528 (S.D.N.Y. 2009). Defendant disputes that: (A) Plaintiff engaged in a protected activity; and (B) that a causal nexus exists between the adverse action and protected activity. These points are addressed below.

## A.    Adverse Employment Action

"[T]he scope of actions that may be materially adverse for purposes of a Title VII retaliation claim is broader than those actions prohibited by Title VII's antidiscrimination provisions and 'extends beyond workplace-related or employment-related retaliatory acts and harm.'" Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010). "In the context of a retaliation claim, an adverse employment action is any action that a reasonable employee would find materially adverse that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

As detailed above, denial of training, a disproportionately heavy workload, and negative evaluations all may constitute adverse employment actions. In the retaliation context, these actions are considered adverse if they would dissuade a reasonable worker from complaining of discrimination. Plaintiff was subjected to all of these adverse actions and was accused of making a false injury report after she filed her complaint. (Compl. ¶58). Furthermore, she was subjected to several retaliatory comments by Zirin, as discussed further below, such as "you will never win." (Compl. ¶47). As a result of the foregoing, Plaintiff has sufficiently pled that she was subjected to adverse employment actions.[2]

---

[2] Defendant argues that the adverse actions suffered by Plaintiff began well before Plaintiff filed her intent to sue letter on December 30, 2014. However, many of these actions occurred after this date, i.e., the covering of classes from February to March 2015.

### B.    Causal Nexus

A plaintiff may demonstrate a causal connection between the protected activity and the adverse action taken by the employer in one of several ways. Borrero v. Collins Bldg. Services, Inc., 2002 WL 31415511, at *15 (S.D.N.Y 2002). First, plaintiff may present "evidence of retaliatory animus directed against the plaintiff [to] establish the causal connection directly." Id. (citations and internal quotation marks omitted). Additionally, a plaintiff may illustrate the connection "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, [ ... ] *or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct*." Id. (emphasis added) (citations and internal quotation marks omitted). Here, Plaintiff has established both close temporal proximity and that she was treated less well than similarly situated employees.

Close temporal proximity may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action. See Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010). ). Notably, there is no "bright-line" rule which sets forth the maximum length of time that can transpire between a plaintiff's participation in protected activities and the ensuing adverse employment actions." See Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F. 3d 545, 664 (2d Cir. 2001). See also Benedict v. Town of Newburgh Town Board, 125 F. Supp. 2d 675 (S.D.N.Y. 2000) ("[w]hile some appellate decisions have noted that the time elapsed between events is relevant, we know of no case in which the life expectancy of a [retaliatory] grudge has been established as a matter of law with such finite precision.").

Here, Plaintiff sent a letter of intent to the DOE complaining of discrimination on December 30, 2014. (Compl. ¶42). On January 16, 2015, Zirin saw Plaintiff walking out of

school and said to her, "you will never win." (Compl. ¶47). Following that day, Plaintiff was repeatedly denied training on five Danielson rubric domains, despite her requests. (Compl. ¶48). Since the letter was not directly addressed to Zirin, Plaintiff has no way of knowing exactly when he found out of her intent to sue. However, one can infer from the above set of facts that he became aware on January 16, 2015, when he made his first comment to Plaintiff, creating a causal connection between Plaintiff's complaint and her denial of continued training. Thus contrary to Defendant's argument, the denial of continued training is not a mere continuance of the failure to train that occurred prior to the filing of the complaint.

On January 22, 2015 Zirin made several threatening and retaliatory comments to Plaintiff. (Compl. ¶49). He again told Plaintiff "you will never win." (Compl. ¶49). Later that day, he told Plaitniff, "whatever you say in this building will come back to me" and then stated sarcastically, "I didn't even know you had a lawsuit," inferring that he will deny knowledge of Plaintiff's protected activity and engage in retaliatory conduct. (Compl. ¶49). On January 27, 2015, while meeting with Plaintiff regarding changes to an observation report, Zirin said "I'm not changing it because of the lawsuit." (Compl. ¶50).

Lastly, on March 13, 2015, while Plaintiff was covering a gym class, she became lightheaded and dizzy but was forced to keep walking around when she tried to rest. (Compl. ¶53-54). As a result, Plaintiff fainted and was unconscious for two-three minutes and was taken to the hospital by ambulance. (Compl. ¶54). Later that day, Plaintiff submitted an injury report to the DOE detailing the occurrence. (Compl. ¶54). On June 16, 2015, Plaintiff was called in to meet with another Assistant Principal Vitale ("Vitale"). (Compl. ¶58). Plaintiff learned that Zirin had alleged that Plaintiff had filed a false injury report on March 13, 2015. (Compl. ¶58). Vitale then accused Plaintiff of faking her fainting incident altogether. (Compl. ¶58).

Defendant argues that this adverse action of accusing Plaintiff of making false allegations is too attenuated in time from the December 30, 2014 letter. However, even a seemingly distant temporal relationship can support an inference of retaliation where a defendant acts at the first opportunity to retaliate or lays in wait for an opportune time to exact revenge. Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013). The incident itself in which Plaintiff was injured did not occur until March 13, 2015. Thus, only three months had elapsed between the incident and the accusations that she made a false report, further closing the temporal gap between the actions.

As such, Plaintiff has sufficiently pled that she was subjected to adverse employment actions as a result of her complaining of discrimination. Accordingly, of the foregoing, Defendant's motion to dismiss Plaintiff's retaliation claims should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's motion to dismiss in its entirety.

Dated:    Long Island City, New York
          July 8, 2016

Respectfully submitted,

**RICOTTA & MARKS, P.C.**
*Attorneys for Plaintiff*
31-10 37th Avenue, Suite 401
Long Island City, New York 11101
(347) 464-8694

By:    _____
       Matthew Marks